[L. A. No. 9013. In Bank.—January 5, 1928.]

In the Matter of the Estate of MARY MOORE MILLER, Deceased. GEORGE W. MOORE, Respondent, v. JARED H. MILLER, as Executor, etc., et al., Appellants.

Anderson & Anderson, Victor T. Watkins and Edward K. Sheahan for Respondent.

Hunsaker, Britt & Cosgrove, Kimball Fletcher, A. P. Thomson, MacDonald & Thompson, LeCompte Davis and Jerome H. Kann for Appellants.

SEAWELL, J.—This appeal. was taken from an order revoking the probate of the will of Mary Moore Miller, deceased, wife of Jared H. Miller. The grounds of the contest set out are in all material respects a duplication of the grounds upon which a cancellation of the deed of joint tenancy to certain real property was attempted in the case of *Frank M. Kelsey* v. *Jared H. Miller, ante,* p. 61 [263 Pac. 200].

Mary Moore Miller died testate February 17, 1921, in the city of Los Angeles, leaving an estate of considerable value. Her last will and testament was admitted to probate and her surviving husband was appointed executor. George W. Moore, a nephew of decedent and one of her heirs at law and a legatee under the will, instituted a contest of said will on the ground that it was procured solely by reason of the fraud practiced by Jared H. Miller upon said Mary Moore Miller. The fraud alleged to have been practiced arises out of their marital relations which were fully considered by us in *Kelsey* v. *Miller* (L. A. No. 8539). In short, it was the claim there, as here, that Jared H. Miller defrauded and deceived Mary Moore Miller into the belief that he was a single man possessing much business sagacity and considerable means, when, as a matter of fact, he was a married man and possessed no means or business ability or experience. The same marriage ceremonies and divorce decrees that were fully considered in *Kelsey* v. *Miller, supra,* are alleged in the instant case as constituting a part of the fraudulent means resorted to by Dr. Miller to induce Mary Moore Miller into the belief that she was his lawful wife.

The court submitted one hundred and six special findings to the jury. The jury found by special finding one that Mary Moore Miller was an unmarried woman at the time of her death, to wit, February 17, 1921, and by finding two that she left no surviving husband. A number of issues involving purely questions of law were submitted to the jury for their determination, such as whether the circuit court of Shelby County, Tennessee, had jurisdiction of the person of Jared H. Miller at the time it heard the divorce action in 1909, and whether certain decrees were fraudulently obtained.

The court adopted the findings of the jury and entered judgment to the effect that so much of said will as gave, devised, or bequeathed anything or any power to Jared H. Miller, Lillian M. Hays, and Russell C. Miller, children of Jared H. Miller, was not the last will and testament of Mary Moore Miller. The findings of the jury, adopted by the court, to the effect that the will is the product of the fraud practiced by Jared H. Miller upon his wife by inducing her to believe that he was her lawful husband when as a matter of law he was not and that he fraudulently represented to her that he was a man of affluence and possessed superior financial ability and that she believed said representations to be true, but as a matter of fact they were false, and that she would not have made him her beneficiary had she not been fraudulently imposed upon in the manner above set out, are in conflict with our decision in *Kelsey* v. *Miller, ante,* p. 61 [263 Pac. 200], and *Kelsey, as Special Administrator,* v. *J. H. Miller et al., post,* p. 96 [263 Pac. 213], and the judgment of the two trial courts who heard said causes.

The cases above cited on the marriage status of Mary Moore Miller and the fraud alleged to have been practiced upon her by Dr. Miller, who was her husband, necessarily have direct application to the same state of facts which exists in the instant case.

That Mary Moore Miller did exactly what she intended to do with respect to making Dr. Miller and his children legatees and devisees of her will, as shown by her letters, her plans and conduct, from the first to the last, there can be no doubt. An examination of her will shows that she made not the will that a woman would have made who was

under the domination of evil and sordid influences, but such a will as a free agent would have made who was actuated by a desire to be both just and charitable. All of her estate did not, by any means, go to Dr. Miller, the person charged with sinister designs on her wealth. She provided that a needy friend, upon whose property she held a mortgage, should not be called upon to pay during the term of her life. She then provided for the organization of a holding corporation which was to take over all of her bonds, stocks, and other valuable properties for the purpose of paying annuities to those she wished to make her beneficiaries. She named as trustees of this holding corporation her husband, Jared H. Miller; her brother, George W. Moore, an attorney at law; and her sister, Eliza M. Monroe. Her will then sets out in detail her instructions as to the handling of her affairs. Her bequests follow: To her husband, one-half of the net receipts of said corporation; to her sister, Eliza M. Monroe, $2,400 per annum and upon her death to her child; to her sister-in-law, Frances E. Moore, $2,400 per annum during her life and upon her death to be paid to her children; to her sister-in-law, Margaret E. Moore, $2,400 during life; to her brother, George William Moore, $2,400, and upon his death to his child; to her niece, Lucy M. Sustedt, $200 a year; to her nephew, George W. Moore, $200 a year; to her niece, Carrie Moore Post, $200 a year; to her stepson, Russell C. Miller, and stepdaughter, Lillian Miller, $200 each per annum and upon the death of their father each is to have $1,200 a year. She then makes bequests to three friends, to two of whom she gives $600 a year each, and to the other $300 a year so long as they shall live. The will upon its face answers the charge that it is the product of fraud and deceit. Her instructions as to how her estate shall pass from one to another in case of death and the manner in which the business shall be conducted shows much intelligent thought on the part of Mary Moore Miller. It is the voluntary product of her mind after months of consultation with her brother by word and by letter and with her attorney in Los Angeles and with Dr. Miller. Her letters to her brother with reference to her will continued practically to the time the will was executed. No one can read those letters and entertain a doubt as to her testamentary freedom.

█ The evidence is absolutely insufficient to sustain a finding that she was under the influence or domination of any person at the time she executed her will. Unquestionably she was then the legal spouse of Jared H. Miller. The will was solemnly executed according to the forms of law and being her free and voluntary act it cannot be lightly set aside.

The judgment is reversed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.